# IN THE SUPREME COURT OF IOWA

No. 07–1456

Filed June 11, 2010

**RORY REILLY,**

Plaintiff,

vs.

**IOWA DISTRICT COURT FOR
HENRY COUNTY,**

Defendant.

---

Certiorari from the Iowa District Court for Henry County, John G. Linn, Judge.

Inmate challenges inability to accrue earned-time credits based on removal from sex offender treatment program because of a failed polygraph examination. **WRIT SUSTAINED.**

Philip B. Mears, Mears Law Office, Iowa City, for plaintiff.

Thomas J. Miller, Attorney General, and Forrest Guddall, Assistant Attorney General, for defendant.

**STREIT, Justice**.

Rory Reilly filed a postconviction action challenging the Iowa Department of Corrections' (IDOC) revocation of his ability to accrue earned time because he was removed from a sex offender treatment program (SOTP). While serving his sentence for a lascivious acts conviction, IDOC required Reilly to participate in SOTP. While participating in the program, Reilly failed a polygraph examination and was removed from SOTP, leading to a determination that he was ineligible to accrue further earned time. We hold IDOC's removal of Reilly from SOTP violated his due process rights. We also hold IDOC is not prohibited from using polygraph examinations within SOTP. We sustain the writ of certiorari.

## I.     Background Facts and Proceedings.

Rory Reilly was convicted of lascivious acts with a child under Iowa Code section 709.8 (1999) based on an offense that took place in March, 2001. He began serving his sentence in December, 2005. IDOC determined Reilly was required to participate in SOTP. As part of the treatment, IDOC administered a specific issue polygraph examination to Reilly because Reilly's account of his sexual offense differed in some way from his victim's account. Reilly failed the polygraph examination, and IDOC removed him from SOTP because of the failed polygraph test.

Once removed from SOTP, IDOC stopped Reilly's ability to earn time to reduce his sentence pursuant to Iowa Code section 903A.2 (Supp. 2005). Prior to his removal, Reilly's tentative discharge date was March 20, 2008. After his removal, Reilly's tentative discharge date was June 13, 2010. Reilly was later reinstated into SOTP, and his discharge

date was changed to May 27, 2008.  Therefore, his temporary removal from SOTP added approximately two months to Reilly's sentence.[1]

Reilly appealed his removal from SOTP to the deputy warden, and his appeal was denied.  He then filed a postconviction petition under Iowa Code section 822.2(1)(*f*),[2] or in the alternative section 822.2(1)(*e*) or Iowa Code chapter 17A.  The district court determined review was appropriate under Iowa Code section 822.2(1)(*f*) and denied Reilly's petition on the merits.  Reilly appealed.

## II.    Scope of Review.

Generally, postconviction relief proceedings are reviewed for correction of errors at law.  *DeVoss v. State*, 648 N.W.2d 56, 60 (Iowa 2002).  "We review issues of statutory construction for errors at law."  *In re A.W.*, 741 N.W.2d 793, 806 (Iowa 2007).  However, Reilly's claims alleging violations of his constitutional rights are reviewed " 'in light of the totality of the circumstances and the record upon which the postconviction court's ruling was made.' "  *Risdal v. State*, 573 N.W.2d 261, 263 (Iowa 1998) (quoting *James v. State*, 541 N.W.2d 864, 869 (Iowa 1995)).  This is the functional equivalent of de novo review.  *Id.*

## III.   Merits.

As set forth in the companion case, *Dykstra v. Iowa District Court,* ___ N.W.2d ___, ___ (Iowa 2010), section 903A.2, which establishes

---

[1]It is unclear from the record whether Reilly was discharged on May 27, 2008 and his case is therefore moot.  *Wilson v. Farrier*, 372 N.W.2d 499, 501 (Iowa 1985).  Regardless, because the underlying question is one of public importance that is likely to reoccur, we reach the merits.  *Id.*

[2]The original petition was filed under the 2005 code.  Iowa Code section 822.2 was amended effective July 1, 2006 to make nonsubstantive corrections.  See 2006 Iowa Acts ch. 1010, § 162.  These corrections renumbered section 822.2's subsections and unnumbered paragraphs.  Because this amendment did not make substantive changes and makes the subsections more easily identifiable, we refer to chapter 822 as set forth in the 2009 code.

inmates' ability to earn time, was amended in 2000, effective January 1, 2001, and in 2005. IDOC applied the 2005 amendment to Reilly, which states:

> [A]n inmate required to participate in a sex offender treatment program shall not be eligible for a reduction of sentence unless the inmate participates in and completes a sex offender treatment program established by the director.

Iowa Code § 903A.2(1)(*a*) (Supp. 2005). IDOC therefore stopped Reilly's ability to accrue earned time when he was removed from SOTP.

Reilly raises four arguments in his postconviction petition. First, Reilly argues IDOC's application of the 2005 amendment to him violated the Ex Post Facto Clauses of the Iowa and United States Constitutions because he committed the crime prior to the effective date of the 2005 amendment. Second, Reilly argues the 2005 amendment cannot be read retroactively to apply to his sentence. Third, Reilly argues his due process rights were violated. Finally, Reilly argues it was improper for IDOC to remove him from SOTP and also stop his ability to earn time based on a failed polygraph examination.

**A. Ex Post Facto Clause.** This court has previously held that IDOC's application of amended Iowa Code section 903A.2 to inmates whose crimes occurred prior to January 1, 2001, the effective date of the 2001 amendment to section 903A.2, violates the Ex Post Facto Clause. *State v. Iowa Dist. Ct.*, 759 N.W.2d 793, 802 (Iowa 2009). This court held in *Holm v. Iowa District Court*, 767 N.W.2d 409, 416 (Iowa 2009), that application of the 2005 amendment to inmates whose crimes occurred after enactment of the 2001 amendment but before enactment of the 2005 amendment does not violate the ex post facto clause because the 2005 amendment was a clarification of the 2001 amendment. Because Reilly was convicted for acts that took place in 2001, IDOC's application

of the 2005 amendment to Reilly did not violate the Ex Post Facto Clause.

**B. Retroactivity.** Reilly argues section 903A.2, as amended in 2005, cannot be construed to apply retroactively to individuals whose crimes took place after enactment of the 2001 amendment but before enactment of the 2005 amendment. We reject this argument, as we did in *Holm*, because the 2005 amendment did not change the existing law, but merely clarified existing law. *See Holm*, 767 N.W.2d at 416 n.3. Therefore, there is no basis to claim the 2005 amendment is applied retroactively to persons whose crimes were committed after the 2001 amendment.

**C. Due Process.** Reilly argues he was denied due process under the Iowa and United States Constitutions when he was removed from SOTP and his ability to accrue earned time was stopped. Although in the past we have interpreted the United States and Iowa Constitutions "in a similar fashion," *State v. Seering*, 701 N.W.2d 655, 662 (Iowa 2005), we " 'jealously guard our right and duty to differ in appropriate cases.' " *State v. Cline*, 617 N.W.2d 277, 285 (Iowa 2000) (quoting *State v. Olsen*, 293 N.W.2d 216, 220 (Iowa 1980)), *overruled on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001). Because Reilly has not advanced a standard for interpreting the due process clause under the Iowa Constitution different from its federal constitutional counterpart, we will apply the general principles as outlined by the United States Supreme Court. *See State v. Bruegger*, 773 N.W.2d 862, 883 (Iowa 2009). Even so, we do not necessarily apply the federal standards in the same way as the Supreme Court. *Id.*

Reilly was removed from SOTP because his account of his sexual crime differed from that of the victim, and he failed a polygraph

examination on the specifics of that crime. Reilly contends that because he has a liberty interest in his ability to accrue earned time, *see Holm*, 767 N.W.2d at 417–18, the decision to remove him from SOTP and therefore stop his ability to earn time requires greater protections than those afforded by IDOC. Specifically, Reilly contends that IDOC must comply with the requirements set forth by the United States Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 563–71, 94 S. Ct. 2963, 2978–82, 41 L. Ed. 2d 935, 955–59 (1974): advance written notice, a written statement of the reasons relied upon for his removal, and a hearing before a neutral fact finder.

"[T]he first step in any procedural due process inquiry is the determination of 'whether a protected liberty or property interest is involved.'" *Seering*, 701 N.W.2d at 665 (quoting *Bowers v. Polk County Bd. of Supervisors*, 638 N.W.2d 682, 691 (Iowa 2002)). The Supreme Court has recognized two instances when liberty interests of prisoners are implicated. First, when a restraint imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and second, when a restraint "will inevitably affect the duration of [the inmate's] sentence." *Sandin v. Conner*, 515 U.S. 472, 484, 487, 115 S. Ct. 2293, 2300, 2302, 132 L.Ed.2d 418, 430–31 (1995).

We previously recognized a liberty interest in an inmate's ability to accrue earned time. *See Holm*, 767 N.W.2d at 417–18. "It is important . . . to precisely identify the right that [Reilly] asserts as the basis for his liberty interest." *Sanford v. Manternach*, 601 N.W.2d 360, 366 (Iowa 1999). Holm challenged IDOC's initial classification decision that he be required to participate in SOTP. As we explained in *Dykstra*, this decision affects a liberty interest because the classification as a sex offender implicates the inmate's ability to accrue earned time and

imposes mandatory behavior modification treatment. *Dykstra*, \_\_\_ N.W.2d at \_\_\_. In contrast, Reilly's due process concerns surround IDOC actions after he had been classified as required to participate in SOTP. Reilly challenges the procedures used to remove him from SOTP. Although the context of IDOC's action towards Reilly differs from the classification decisions regarding Holm and Dykstra, the loss is essentially the same—ineligibility to accrue earned time. Upon Reilly's removal from SOTP, his ability to accrue earned time was stopped pursuant to the requirement of Iowa Code section 903A.2(1)(*a*). Therefore, removal inevitably affected the duration of Reilly's sentence. *See Wilson v. Jones*, 430 F.3d 1113, 1120–21 (10th Cir. 2005) (finding a liberty interest where reduction in credit earning class was a statutory requirement of a misconduct conviction and therefore "inevitably affected the duration of [the inmate's] sentence" (quoting *Sandin*, 515 U.S. at 487, 115 S. Ct. at 2293, 132 L. Ed. 2d at 431)). We hold Reilly has a liberty interest in his ability to earn time as implicated by his removal from SOTP.

When an inmate's liberty interest is affected, the court must analyze what procedures are necessary to protect that right. While some circumstances, such as the initial classification of prisoners at issue in *Dykstra*, may require that the protections identified in *Wolff* be implemented, not all IDOC decisions which implicate a liberty interest require such protections. The United States Supreme Court has recognized that

> [b]ecause of the broad spectrum of concerns to which the term [due process] must apply, flexibility is necessary to gear the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error.

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 13, 99 S. Ct. 2100, 2106, 60 L. Ed. 2d 668, 679 (1979), *abrogated on other grounds by Sandin*, 515 U.S. at 480–84, 115 S. Ct. at 2298–2300, 132 L. Ed. 2d at 427–30.

The *Greenholtz* court held that procedures employed by the Nebraska parole board for initial parole determinations did not violate due process even though they did not meet the requirements of *Wolff*.[3] *Id.* at 14–16, 99 S. Ct. at 2107–08, 60 L. Ed. 2d at 680–81. The *Greenholtz* court held the following procedures employed by Nebraska satisfied due process for the initial parole classification: (1) the inmate received advance notice of the parole hearing, thereby allowing time to secure letters or statements; (2) the inmate was permitted to appear before the parole board and present letters or statements on his own behalf; and (3) the parole board communicates the reason for denial of parole to the inmate as a guide for future behavior. *Id; see also Hewitt v. Helms*, 459 U.S. 460, 473–76, 103 S. Ct. 864, 872–74, 74 L. Ed. 2d 675, 689–91 (1983) (holding the level of process due for inmates being considered for transfer to administrative segregation requires some notice of charges and an opportunity to be heard), *abrogated on other grounds by Sandin*, 515 U.S. 480–84, 115 S. Ct. at 2298–2300, 132 L. Ed. 2d at 427–30.

Generally, to determine what process is due, this court analyzes:

> " 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural

---

[3]The United States Supreme Court has noted that "[a]lthough *Sandin* abrogated *Greenholtz's* and *Hewitt's* methodology for establishing the liberty interest, these cases remain instructive for their discussion of the appropriate level of procedural safeguards." *Wilkinson v. Austin*, 545 U.S. 209, 229, 125 S. Ct. 2384, 2397, 162 L. Ed. 2d 174, 194 (2005).

safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.' "

*Seering*, 701 N.W.2d at 665 (quoting *Bowers v. Polk County Bd. of Supervisors*, 638 N.W.2d 682, 691 (Iowa 2002)); *accord Holm*, 767 N.W.2d at 417. As one federal district court explained, within the prison context "the court must evaluate the competing institutional and individual interests, with due regard to the broad discretion that is necessarily reposed in prison administrators and to the 'nature' of the liberty interest at issue." *Lavine v. Wright*, 423 F. Supp. 357, 362 (D. Utah 1976)

Although removal from SOTP implicates a liberty interest, it is a lesser interest than the initial classification decision requiring an inmate to participate in SOTP. The removal decision is a discretionary decision by prison officials based on any number of considerations whereas the initial inmate classification addressed in *Dykstra* amounts to a specific factual determination that the inmate has engaged in sexually inappropriate behavior. The United States Supreme Court has identified attempts to remove an inmate from free society based on a "specific parole violation" or a decision to revoke good-time credits for "specific, serious misbehavior" as situations where "more formal, adversary-type procedures might be useful." *Wilkinson v. Austin*, 545 U.S. 209, 228, 125 S. Ct. 2384, 2397, 162 L. Ed. 2d 174, 193 (2005). Where an inmate has not been convicted of a sex offense or admitted to facts of a sexual nature, the necessity for specific procedural protections in SOTP classification is based on the search for specific facts. *Cf. Greenholtz*, 442 U.S. at 14, 99 S. Ct. at 2107, 60 L. Ed. 2d at 679 ("Procedures

designed to elicit specific facts, such as those required in . . . *Wolff*, are not necessarily appropriate to a Nebraska parole decision.")

With regard to a decision to remove an inmate from SOTP, Iowa Code section 903A.4 grants IDOC the authority to "establish rules as to what constitutes '*satisfactory participation*' for purposes of a reduction of sentence under section 903A.2, for programs that are available or unavailable." The discretion to determine what constitutes "satisfactory participation" in a treatment program necessarily includes the discretion to remove those who do not satisfactorily participate. Removal from SOTP occurs after an inmate's initial classification and is based on an assessment of the inmate's participation by the professionals administering the SOTP program. This determination is more closely aligned with the parole release decisions addressed in *Greenholtz*, where the decisions are affected by "analysis of psychological factors combined with fact evaluation guided by the practical experience of the . . . decisionmakers." 442 U.S. at 13, 99 S. Ct. at 2107, 60 L. Ed. 2d at 679. Where, as here, "the inquiry draws more on the experience of prison administrators . . . the informal, nonadversary procedures set forth in *Greenholtz* and *Hewitt* provide the appropriate model." *Wilkinson*, 545 U.S. at 228–29, 125 S. Ct. at 2397, 162 L. Ed. 2d at 193–94; *see also Lavine*, 423 F. Supp. at 363 (holding oral notice, opportunity to present evidence, and oral advisement of the decision satisfied due process where "prison officials have the discretion to transfer prisoners for any number of reasons" and their "discretion is not limited to instances of serious misconduct").

The exercise of IDOC's discretion is evident in the factual circumstances surrounding Reilly's removal. After removing Reilly from SOTP, IDOC employees worked with Reilly to remedy the problem and

Reilly was readmitted to SOTP. Reilly's removal could have affected the duration of his prison sentence by over two years, but only affected it by approximately two months because he was shortly readmitted to SOTP. *Cf. Montgomery v. Anderson,* 262 F.3d 641, 645–46 (7th Cir. 2001) (noting *Wolff* procedures are not necessarily required in circumstances where "the stakes and correspondingly the required procedures are diminished.")

The full panoply of protections that would accompany a formal hearing are unnecessary for removal from SOTP because of the nature of the liberty interest at stake, the discretion granted to IDOC employees, and the professional judgment behind any removal decision. Regardless, the minimum protections of due process, noted in *Greenholtz,* must be met. We hold IDOC must provide (1) advance notice allowing the inmate time to secure documents or prepare a statement, (2) an opportunity to present documentary evidence, letters, or make statements before the decision-maker, and (3) an explanation for the reasons behind any removal decision. Additionally, although not contested in *Greenholtz,* it is a fundamental element of due process that the decisionmakers be "sufficiently impartial." *See Wolff,* 418 U.S. at 570–71, 94 S. Ct. at 2982, 41 L. Ed. 2d at 959.

The process employed by IDOC to remove Reilly from SOTP failed to comply with three of the four procedures we hold due process requires. First, Reilly was not given advance notice that he would have an opportunity to address the removal decision before the decisionmakers. Second, the record demonstrates that during the meeting at which Reilly was presented with a refusal form explaining the consequences of removal from SOTP, which he refused to sign, Reilly was not allowed to present documentary evidence or make a statement to the

decisionmakers on his own behalf. Third, although IDOC notes indicate Reilly was removed from SOTP because he failed a polygraph, had no new admissions, and was uncooperative, Reilly's handwritten appeal suggests IDOC did not fully explain these reasons for his removal and would only tell him he failed a polygraph examination. Reilly was, however, eventually informed of the reasons for his removal from SOTP and IDOC worked to help Reilly adjust those problems that led to his removal, allowing Reilly to successfully rejoin SOTP within four months. IDOC's work with Reilly after his removal does not cure the initial failure to provide him with the reasons for his removal.

When Reilly was informed of the decision to remove him from SOTP, he met with three prison officials, including the treatment director. Reilly complains that these officials were not "sufficiently impartial." We have explained within the prison disciplinary context that "[t]he independence required of the hearing officer is that the officer not be personally involved in the incident for which discipline is sought or in prior disciplinary actions against the inmate." *Williams v. State*, 421 N.W.2d 890, 895 (Iowa 1988). There is no indication in the record that any of the officials who met with Reilly also administered the polygraph examination or were involved in any relevant incidents with Reilly. Based on the record before the court, the professionals administering SOTP are sufficiently impartial. As in *Wolff*, there is no evidence in the record that these three individuals "present[] such a hazard of arbitrary decisionmaking that it should be held violative of due process of law." 418 U.S. at 571, 94 S. Ct. at 2982, 41 L. Ed. 2d at 959–60. Further, Reilly is provided the opportunity to appeal the decision to the deputy warden, who was not at the original hearing.

In summary, IDOC complied with only one of the four basic requirements—an impartial decisionmaker—and therefore, Reilly's due process rights were violated. We remand to the district court for determination of what, if any, remedy is required.

**D. Polygraph Examination.** IDOC required Reilly to take a specific issue polygraph examination as part of the SOTP because Reilly's account of his crime differed from his victim's account. After Reilly failed the polygraph examination, IDOC removed him from the SOTP and stopped his ability to earn additional time off his sentence. IDOC based this decision on the polygraph, a lack of "new admissions" and on Reilly's "uncooperative" behavior. Reilly argues it was improper for IDOC to rely on a polygraph examination to make the removal decision which led to Reilly's ineligibility to earn time. Reilly cites to this court's general distrust of polygraph examinations, *see State v. Conner*, 241 N.W.2d 447, 458–59 (Iowa 1976), their inadmissibility in court unless stipulated to by both parties, *id.*, and an Iowa court of appeals decision holding that unstipulated polygraph examinations could not be relied upon in IDOC disciplinary proceedings, *see Bradley v. State*, 473 N.W.2d 224, 226 (Iowa Ct. App. 1991).

As noted above, section 903A.4 authorizes IDOC to develop policy and procedural rules to implement section 903A.2 and determine what constitutes "satisfactory participation" in a treatment program. It is not improper for IDOC to consider polygraph examinations administered as part of treatment to make decisions regarding whether an inmate's participation was satisfactory and whether the inmate should be removed. Although unstipulated polygraph examinations are not typically admissible in court proceedings and the court of appeals has held they are inadmissible in IDOC disciplinary proceedings, IDOC used

the polygraph examination here for a different purpose. The examination was not used for general discipline or adjudicative fact-finding but was instead used as part of a treatment program. We have previously noted the use of polygraphs in sex offender treatment programs. *Swanson v. Civil Commitment Unit for Sex Offenders (CCUSO)*, 737 N.W.2d 300, 303 (Iowa 2007). Other jurisdictions have held use of polygraph examinations permissible to serve therapeutic values. *See United States v. Johnson*, 446 F.3d 272, 278 (2d Cir. 2006) ("The polygraph can help penetrate deception and encourage an offender to confront his own motivations and behaviors. These outcomes further sentencing objectives such as rehabilitation and deterrence, with reasonably small incremental deprivations of liberty."); *United States v. Dotson*, 324 F.3d 256, 261 (4th Cir. 2003) ("[E]videntiary cases do not govern our evaluation of the use of polygraphs in connection with the treatment of an offender. The use of a polygraph test here is not aimed at gathering evidence to inculpate or exculpate [the offender]. Rather, the test is contemplated as a potential treatment tool . . . .").

We held in *Dykstra,* that use of a polygraph as a substitute for procedural protections or as the sole evidence for deprivation of a liberty interest may implicate constitutional concerns. *Dykstra,* ___ N.W.2d at ___. However, decisions or hearings regarding removal from SOTP may consider polygraph examinations as a factor influencing the removal decision because polygraph examinations serve a rehabilitative purpose within treatment.

## IV. Conclusion.

IDOC's application of Iowa Code section 903A.2 to Reilly did not violate the ex post facto clause. The procedures employed by IDOC to remove Reilly from SOTP did violate his procedural due process rights,

although IDOC is entitled to consider polygraph examinations in making SOTP removal decisions. We remand to the district court for consideration of the appropriate remedy.

**WRIT SUSTAINED.**