# IN THE COURT OF APPEALS OF IOWA

No. 15-0776
Filed September 14, 2016

**JOHNNY LEE JOHNSON,**
　　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　　Respondent-Appellee.
_____

　　　　Appeal from the Iowa District Court for Guthrie County, Randy V. Hefner,

Judge.


　　　　An applicant appeals the denial of his application for postconviction relief.

**AFFIRMED.**



　　　　Karmen Anderson of the Law Office of Karmen Anderson, Des Moines, for

appellant.

　　　　Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney

General, for appellee State.



　　　　Considered by Vogel, P.J., and Doyle and Bower, JJ.

**VOGEL, Presiding Judge.**

Johnny Johnson appeals the denial of his application for postconviction relief, asserting the district court erred in determining he was not prejudiced by his trial counsel's breach of an essential duty. He also claims his appellate counsel was ineffective. Because we find the district court properly concluded Johnson failed to meet his burden to establish prejudice and Johnson's appellate counsel was not ineffective, we affirm.

I.      Background Facts and Proceedings

In 2008, Johnson was convicted of two counts of murder in the first degree. Johnson's convictions were affirmed on direct appeal. *State v. Johnson*, No. 08-0320, 2009 WL 4842480, at *6 (Iowa Ct. App. Dec. 17, 2009). In 2011, Johnson filed an application for postconviction relief, which was partially based on his trial counsel's failure to object to Johnson being shackled during the trial and on his appellate counsel's failure to raise the issue of Johnson's shackling on direct appeal.

In 2013, the court ruled on Johnson's postconviction action and determined his trial counsel breached an essential duty by failing to object to Johnson being shackled during trial. The court then shifted the burden to the State to prove beyond a reasonable doubt the shackling did not prejudice Johnson at trial. After determining the State failed to meet its burden, the court vacated Johnson's convictions and ordered a new trial.

On appeal, this court reversed the grant of Johnson's application for postconviction relief. *Johnson v. State*, 860 N.W.2d 913, 922 (Iowa Ct. App. 2014). We determined the postconviction court incorrectly shifted the burden to

the State to prove prejudice did not occur in Johnson's ineffectiveness claim against his trial counsel. *Id.* at 919–20 ("We agree with the majority of jurisdictions that it remains the applicant's burden to demonstrate prejudice when claiming ineffective assistance of counsel based on the lack of an objection to shackling . . . ."). We then remanded Johnson's case back to the postconviction court for it to apply the proper standard regarding prejudice. *Id.* at 921.

On remand, the postconviction court found that despite Johnson's trial counsel's breach of an essential duty, Johnson failed to "carry his burden to prove a reasonable probability of a different result." Accordingly, the court rejected Johnson's ineffective-assistance-of-counsel claim as to his trial counsel and denied his application for postconviction relief. Johnson appeals.

II.     Standard of Review

"The standard of review on appeal from the denial of postconviction relief is for errors at law." *Everett v. State*, 789 N.W.2d 151, 155 (Iowa 2010) (quoting *McLaughin v. State*, 533 N.W.2d 546, 547 (Iowa 1995)). However, alleged "violations of . . . constitutional rights are reviewed 'in light of the totality of the circumstances and the record upon which the postconviction court's ruling was made.'" *Reilly v. Iowa Dist. Ct.*, 783 N.W.2d 490, 493 (Iowa 2010) (citation omitted). "This is the functional equivalent of de novo review." *Id.*

III.    Ineffectiveness of Trial Counsel

Johnson argues the postconviction court erred in its consideration of his ineffectiveness-of-trial-counsel claim. Specifically, Johnson claims his trial counsel was ineffective in failing to object to his shackling and that this failure

prejudiced him at trial. The State asserts the district court properly concluded Johnson was not prejudiced by his trial counsel's breach of an essential duty.

Counsel is ineffective when counsel's performance, measured against objective standards, falls below professional norms. *State v. Clay*, 824 N.W.2d 488, 494–95 (Iowa 2012). "In order to succeed on a claim of ineffective assistance of counsel, a defendant must prove: (1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008).

Neither of Johnson's trial attorneys remembered specifically objecting to Johnson being shackled; however, one was "certain" he would not have simply agreed to Johnson being shackled. Both attorneys believed an agreement must have been reached, balancing potential security concerns and the choice between having uniformed deputies present in the courtroom or having Johnson shackled. Prior to voir dire, the trial judge informed the jury Johnson was wearing shackles and that no conclusion was to be drawn from that fact. It is unclear whether the jury could see Johnson was wearing shackles because he was seated when the jury entered the courtroom, was wearing long trousers, and was seated behind counsel table, which was partially shielded from the jury box by another table and file boxes.

A.     Failure to Perform an Essential Duty

Several prior proceedings in this case have already determined Johnson's trial counsel failed to perform an essential duty. The postconviction court determined Johnson's trial counsel failed to perform an essential duty in its initial postconviction ruling. This court acknowledged that determination in the appeal

of that ruling. *Johnson*, 860 N.W.2d at 917. Additionally, on remand, the postconviction court reaffirmed this determination. The State has not challenged this determination on appeal; therefore, we consider the prior determination that Johnson's trial counsel failed to perform an essential duty undisputed.

### B. Prejudice

When counsel has been determined to have breached an essential duty, the claimant must then establish prejudice, by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The applicant must show prejudice by a preponderance of the evidence. *Clay*, 824 N.W.2d at 496. "In determining whether this standard has been met, we must consider the totality of the evidence . . . ." *State v. Graves*, 668 N.W.2d 860, 882–83 (Iowa 2003).

In our decision following the first postconviction ruling, this court detailed the evidence presented against Johnson at his trial:

> This evidence includes Johnson: (1) stating to his friend, Mark Bonney, that he wanted to "get his hands on" White two to three weeks before the murders; (2) going into his house the night of the murders to retrieve his gun; (3) driving five and one-half miles to his wife's apartment; (4) parking his car approximately one block away from the apartment; (5) obscuring his face by wrapping himself in a hooded sweatshirt; (6) positioning himself by kneeling outside the apartment's screen door; (7) waiting several seconds before firing his gun; (8) proceeding to shoot White three times; (9) shooting White once more after entering the residence; (10) chasing Kim down the hallway, and opening the daughter's bedroom door before shooting Kim; (11) bludgeoning both White and Kim in the back of their heads with the butt of his gun multiple times, "to make sure they were dead"; and (12) declaring to his daughter after shooting the victims that Kim "was f-ing" White.

*Johnson*, 860 N.W.2d at 920–21. At trial, Johnson did not deny he killed the victims. *Id.* at 920. Instead, Johnson argued he was guilty of voluntary manslaughter because the elements for first-degree murder were lacking. *Id.* "To prove Johnson committed two counts of murder in the first degree, the State needed to establish Johnson acted with malice aforethought, killing his two victims 'willfully, deliberately, and with premeditation.'" *Id.* (quoting Iowa Code §§ 707.1, .2(1) (2007)).

Based on the totality of the evidence presented at Johnson's trial, the jury had sufficient evidence to conclude he was guilty of first-degree murder. *See Graves*, 668 N.W.2d at 882–83. To the best of trial counsel's memory six years after the trial in the postconviction hearing, Johnson was shackled. Absent the prejudice that may have resulted from Johnson being shackled, the evidence against him remained overwhelming. Hence, Johnson did not demonstrate a reasonable probability the result of his trial would have been different.

Because Johnson failed to establish the prejudice prong, we conclude the postconviction court properly rejected his ineffectiveness claim against his trial counsel.

IV.    Ineffectiveness of Appellate Counsel

Johnson next claims the postconviction court erred in its consideration of his ineffectiveness-of-appellate-counsel claim. Specifically, Johnson argues his appellate counsel was ineffective in failing to raise the issue of him being shackled on direct appeal. The State asserts the trial record was not sufficient for appellate counsel to raise the shackling issue on direct appeal.

The same standards discussed when analyzing Johnson's ineffectiveness-of-trial-counsel claim apply when analyzing his ineffectiveness-of-appellate-counsel claim. Johnson must demonstrate that his appellate counsel failed to perform an essential duty and that he was prejudiced by counsel's failure. *Maxwell*, 743 N.W.2d at 195.

### A. Failure to Perform an Essential Duty

Whether counsel failed to perform an essential duty is measured against the objective standard of a reasonably competent practitioner. *Id.* at 195–96. We begin with the presumption that counsel performed their duties competently, and "this court 'avoid[s] second-guessing and hindsight.'" *Id.* at 196 (alteration in original) (quoting *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001)). Further, we analyze the claim based on the totality of the circumstances. *Id.*

Johnson's appellate counsel failed to perform an essential duty if a reasonably competent practitioner would have raised the issue of Johnson's shackling on direct appeal. *See id.* at 195–96. The answer to this question is dependent on the level to which the trial record revealed the shackling issue should be raised. Here, appellate counsel, reviewing the record from a trial lasting days, was limited to a solitary reference to shackling in the trial record—a transcript of a pretrial hearing[1] discussing the possibility of shackling Johnson during trial. The transcript read:

> THE COURT: The other matter is concerning Mr. Johnson and courthouse security. And it is the court's understanding that there was some, apparently, discussion yesterday about arrangements made for Mr. Johnson to be seated before the jury's brought in and to remain seated until they are out of the courtroom.

---

[1] The trial judge, the prosecutor, Johnson, and his counsel were present at this hearing.

And I guess some additional efforts to try to make as inconspicuous as possible the fact that he's wearing shackles. And there have been some discussions this morning with counsel. I've suggested that perhaps it would be sensible to tell the jury up-front that Mr. Johnson is wearing shackles, and perhaps explain to them the reason for that in such a manner that they will not be left to debate about it or to wonder about it. My suggestion was that I would simply tell the jurors this morning that they may notice that Mr. Johnson is wearing shackles, and that that's done because we do have security policies for the courtroom and the courthouse, and that because we have three doors to the courtroom, that it would require a number of deputies to be present. That our trial is expected to take seven or eight days during the winter when we like to have the deputies out on the street and patrolling the county. And that in order to alleviate that need, to have those deputies tied up for a week, that Mr. Johnson has agreed to the shackles. That he has no plans to go anywhere and has agreed to wear those so that we can eliminate the need to keep all of those deputies here.

Something along those lines. And that it might take care of any speculation on the part of the jurors.

Mr. Miler, have you had an opportunity to discuss that with your client?

MR. MILER: We have, Your Honor. And I know that the court was just giving a rough description of how you would advise the jury, but we would ask that in addition to what the court just indicated, that [the jurors] be advised that there are no conclusions to be drawn from the fact that he has shackles on. Otherwise, we have discussed this matter with Mr. Johnson, and we are agreeable to the court's proposal.

THE COURT: Okay. Mr. Johnson, is that acceptable with you?

THE DEFENDANT: Very much so, Your Honor.

THE COURT: All right.

THE DEFENDANT: Thank you.

THE COURT: I assume it is acceptable with the State?

MR. HAMMERAND: Yes, Your Honor.

From this transcript, the only things appellate counsel could have noted were the issue was discussed with counsel present, counsel said they discussed the issue with Johnson, an agreement regarding shackling had apparently been reached, and Johnson consented to being shackled. Appellate counsel had no way of knowing (1) whether an objection had been lodged and addressed

previously; (2) what, if any, specific findings the trial court made regarding shackling outside of this hearing; (3) whether Johnson was actually shackled during the trial; (4) what, if anything, was told to the jury; or (5) what the defense strategy was. There was no further trial record regarding shackling after this brief transcript. Absent this information in the trial record, Johnson's appellate counsel lacked the necessary information to argue a due process violation on direct appeal.[2]

Even if appellate counsel had raised a shackling issue on direct appeal, further development of the record was necessary to determine—at a minimum— whether an objection had been made and what considerations led to Johnson being shackled.[3] Absent this development of the trial record, on appellate review, the issue would have been preserved for further development of the record for a possible postconviction action.

Because Johnson's appellate counsel lacked the necessary information to pursue the shackling issue on direct appeal, we conclude he did not fail to perform an essential duty.

B.      Prejudice

Because we conclude Johnson's ineffective-assistance-of-appellate counsel claim fails on the essential duty prong, we decline to address the

---

[2] This is particularly true if the claim was to be raised as an ineffective-assistance-of-counsel claim. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006) ("Only in rare cases will the trial record alone be sufficient to resolve the claim on direct appeal.").

[3] While shackling a defendant during trial is considered inherently prejudicial, "shackling a defendant may be justified despite the fact that some prejudice will occur." *State v. Wilson,* 406 N.W.2d 442, 449 (Iowa 1987). "In certain instances, the defendant's right to the physical indicia of innocence before the jury must bow to the competing rights of participants in the courtroom and society at large to a safe and orderly trial." *Id.*

prejudice prong. *Ledezma*, 626 N.W.2d at 142 ("However, both elements do not always need to be addressed.").

## V. Structural Error

Johnson's final claim is that his trial counsel's failure to object to his shackling amounted to a structural error because he was effectively denied counsel.

> [S]tructural error occurs when: (1) counsel is completely denied, actually or constructively, at a crucial stage of the proceeding; (2) where counsel does not place the prosecution's case against meaningful adversarial testing; or (3) where surrounding circumstances justify a presumption of ineffectiveness, such as where counsel has an actual conflict of interest in jointly representing multiple defendants.

*Lado v. State*, 804 N.W.2d 248, 252 (Iowa 2011). Counsel was neither actually nor constructively denied at any point in these proceedings. Johnson had counsel present throughout the pretrial hearings and the trial, and both counsel and Johnson acknowledged that they discussed the shackling in the pretrial transcript. Accordingly, Johnson's structural-error claim is denied.

## VI. Conclusion

As we conclude the district court properly denied Johnson's ineffective–assistance-of-counsel claims against both his trial and appellate counsel and because we deny Johnson's structural-error claim, we affirm the district court's denial of Johnson's application for postconviction relief.

**AFFIRMED.**