# IN THE COURT OF APPEALS OF IOWA

No. 13-1554
Filed December 24, 2014

**JOHNNY LEE JOHNSON,**
Applicant-Appellee/Cross-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellant/Cross-Appellee.
_____

Appeal from the Iowa District Court for Guthrie County, Randy V. Hefner, Judge.

The State appeals and Johnny Johnson cross-appeals from the district court's grant of Johnson's application for postconviction relief. **REVERSED AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**

Thomas J. Miller, Attorney General, Darrel Mullins, Assistant Attorney General, Mary Benton, County Attorney, and Timothy Benton, Assistant County Attorney, for appellant/cross-appellee State.

Karmen Anderson of the Law Office of Karmen Anderson, Des Moines, for appellee/cross-appellant.

Heard by Vogel, P.J., and Miller and Mahan, S.JJ.* Tabor, J., takes no part.

*Senior judges assigned by order pursuant to Iowa Code section 602.9206 (2013).

**VOGEL, P.J.**

The State appeals from the postconviction court's grant of Johnny Johnson's application for postconviction relief, which vacated his two convictions for first-degree murder and ordered a new trial. After finding trial counsel breached an essential duty by not objecting to Johnson being in leg shackles, the postconviction court then shifted the burden onto the State to prove—beyond a reasonable doubt—the shackling did not contribute to the guilty verdict. Within the ineffective-assistance-of-counsel framework, and citing *Strickland v. Washington*, 466 U.S. 668 (1964), the State asserts the burden should have remained with Johnson to show there was a reasonable probability the result of the trial would have been different had trial counsel objected to the leg shackles.

Johnson cross-appeals, arguing the postconviction court erred when it denied his request for a state-funded expert for the postconviction hearing, who would theoretically testify about Johnson's level of intoxication at the time of the killings. Johnson also claims the court was in error when it denied his request for a protective order regarding attorney-client privilege from the underlying criminal case. Johnson's final claim asserts appellate counsel was ineffective for failing to raise the issue of Johnson's shackling on direct appeal.

On the State's appeal, we conclude the postconviction court erred in its burden-shifting analysis. Consequently, we reverse the grant of Johnson's application for postconviction relief and remand the case to the postconviction court to apply the proper standard. On Johnson's cross-appeal, we conclude his motion for a protective order and his request for a state-funded expert were both properly denied. However, because Johnson's claim that appellate counsel was

ineffective for failing to bring the shackling claim on direct appeal will either be rendered moot or be subsumed within the postconviction court's ruling, we deny this claim.

## I. Factual and Procedural Background

Our court, in affirming Johnson's two convictions for first-degree murder, summarized the underlying facts of the case in the following manner:

Sometime in March 2007, Johnson's wife, Kim Johnson, left the family's home in Coon Rapids and moved to an apartment in nearby Bayard. Johnson's teenage daughter, Jessica, moved in with Kim, and his teenage son, Josh, remained with him. In early April 2007, Johnson ran into an acquaintance, Mark Bonney, at the lumberyard in Bayard. Johnson asked Bonney if he knew that Kim had begun dating Greg White, and stated that he would like to get "his hands on" White. Bonney warned Johnson that White was strong and that he carried knives, but did not give serious consideration to Johnson's comment.

On the evening of April 29, 2007, Johnson built a bonfire at his home and drank "four or five" cans of beer. He then retrieved a loaded handgun from inside his home and drove to Kim's apartment in Bayard. Johnson parked about a block away from the apartment at just after 10:00 p.m. He was wearing a black sweatshirt with the hood pulled up over his head. As Johnson approached the apartment he noticed the wooden front door was open. Through the screen door, Johnson saw White in the kitchen, wearing only pajama pants. White did not notice Johnson outside the door.

Johnson knelt and shot White three times through the screen door. He then entered the apartment and shot White once more. Kim ran from Jessica's bedroom, saw White on the floor, and ran back into the bedroom screaming and trying to shut the door behind her. Johnson followed Kim into the bedroom and shot her four times. He then went back into the hall and beat White on the head with the butt of his gun to make sure he was dead, crushing his skull. Johnson reentered the bedroom and beat the back of Kim's head with his gun, also crushing her skull. At that point, Jessica tried to push him off Kim, but he shoved her back to the bed. Johnson's hood fell away from his face, and Jessica realized he was her father. Johnson told her, "It is over. She was f'ing him. I'm going to jail, and I don't care." Johnson then left the apartment.

Jessica checked her mother for a pulse and tried to call 911. A neighbor, Shanda Thomas, heard the gunshots and ran outside.

Jessica told Thomas that "her fucking dad shot her mom." As they waited for police to arrive, Jessica called her grandmother. Thomas heard Jessica tell her grandmother, "You need to get over here. Your fucking son shot my mom." Jessica then called her uncle, Joseph Johnson, and said, "Your fucking brother shot my mom."

Soon after receiving the call from Jessica, Joseph also received a call from Johnson. Johnson asked, "Did you hear what I did?" to which Joseph responded, "Yes, Jessie told me." Joseph talked his brother into meeting him at the Guthrie County Sheriff's Office to turn himself in. When they arrived at the sheriff's office, Johnson noticed a scrape on his hand and told Joseph that he must have gotten it while "beating them . . . to make sure they were dead."

Johnson was handcuffed and brought inside the sheriff's office. Officer Jeremy Long read Johnson his *Miranda* rights, asked him a few questions, booked him, and placed him in a jail cell. At 1:27 a.m. Johnson submitted to a breath test, which measured his blood alcohol at .019. Johnson also gave a DNA sample. At 1:39 a.m. Special Agent Mitch Mortvedt began to interview Johnson. The interview concluded at 3:38 a.m. Mortvedt interviewed Johnson again later that morning, from 10:02 to 11:31 a.m. During the course of these interviews, Johnson confessed to the shootings of Kim and White. Johnson explained the marital problems he and Kim had been going through, his discovery that Kim was dating someone else, and what led him to shoot the victims earlier that evening. Johnson also described exactly where he had thrown his gun on his drive home.

*State v. Johnson*, 08-0320, 2009 WL 4842480, at *1–2 (Iowa Ct. App. Dec. 17, 2009).

Johnson was convicted of the two first-degree-murder charges following a jury trial that commenced on January 8, 2009. Johnson's defense consisted of disputing the first-degree murder requirement that the killings be "willful, deliberate, and with premeditation." *See* Iowa Code §§ 707.1, .2(1) (2007). Instead, while not disputing he killed two people, Johnson argued he was guilty of voluntary manslaughter.

Prior to trial, a discussion was held in chambers regarding Johnson's shackling during trial. The State did not request that Johnson be shackled and trial counsel did not object. Although Johnson had made no threats and was cooperative with law enforcement and court personnel, Johnson indicated that the manner of shackling was agreeable to him. No record was made with respect to whether there was a specific need that Johnson be shackled, though the trial court did make a record noting how the jury was to be informed of Johnson's shackling. Specifically, the court indicated it would tell the jury prior to voir dire that, because the trial was being held in winter, the deputies were needed to patrol the county rather than be kept in the courtroom for a week-long trial.[1] Because voir dire was not reported, there is no record regarding what the jury was actually told.

---

[1] The record shows the following exchange occurred with regard to the shackling issue:

The Court: The other matter is concerning Mr. Johnson and courthouse security. And it is the court's understanding that there was some, apparently, discussion yesterday about arrangements made for Mr. Johnson to be seated before the jury's brought in and to remain seated until they are out of the courtroom. And I guess some additional efforts to try to make as inconspicuous as possible the fact that he's wearing shackles.

And there have been some discussions this morning with counsel. I've suggested that perhaps it would be sensible to tell the jury up-front that Mr. Johnson is wearing shackles, and perhaps explain to them the reason for that in such a manner that they will not be left to debate about it or to wonder about it.

My suggestion was that I would simply tell the jurors this morning that they may notice that Mr. Johnson is wearing shackles, and that that's done because we do have security policies for the courtroom and the courthouse, and that because we have three doors to the courtroom, that it would require a number of deputies to be present. That our trial is expected to take seven or eight days during the winter when we like to have the deputies out on the street and patrolling the county. And that in order to alleviate that need, to have those deputies tied up for a week, that Mr. Johnson has agreed to the shackles. That he has no plans to go anywhere and has agreed to wear those so that we can eliminate the need to keep all of those deputies here. Something along those lines.

On February 25, 2011, Johnson filed an application for postconviction relief, and a hearing was held from August 6 to 7, 2013. The district court entered a ruling on September 19, granting in part and denying in part Johnson's application. The court concluded that, with respect to all of Johnson's claims that did not relate to the shackling issue, he had failed to show trial counsel breached an essential duty. However, the court, after employing the reasoning espoused in *Deck v. Missouri*, 544 U.S. 622, 626-29 (2005), *State v. Wilson*, 406 N.W.2d 442, 448-50 (Iowa 1987), and *Dickerson v. Missouri*, 269 S.W.3d 889, 892-93 (Mo. 2008), shifted the burden onto the State and found it failed to prove beyond a reasonable doubt that Johnson was not prejudiced by the shackling at trial. Specifically, it concluded that because Johnson's defense was based on the lack of premeditation, the shackling prejudiced the jury such that they could conclude Johnson was a dangerous person and/or a flight risk. Consequently, the court found trial counsel was ineffective for failing to object to the shackling, and the State failed to prove beyond a reasonable doubt that the shackling did not

---

And that it might take care of any speculation on the part of the jurors. [Defense counsel], have you had an opportunity to discuss that with your client?

    [Defense Counsel]: We have, Your Honor. And I know that the court was just giving a rough description of how you would advise the jury, but we would ask that in addition to what the court just indicated, that they be advised that there are no conclusions to be drawn from the fact that he has shackles on. Otherwise, we have discussed this matter with Mr. Johnson, and we are agreeable to the court's proposal.

    The Court: Okay. Mr. Johnson, is that acceptable with you?

    The Defendant: Very much so, Your Honor.

    The Court: All right.

    The Defendant: Thank you.

    The Court: I assume it is acceptable with the State?

    [The State]: Yes, Your Honor.

prejudice Johnson. It therefore vacated the convictions and ordered a new trial. The State appeals, and Johnson cross-appeals.

## II. Shackling

The State conceded at oral argument the trial court should have articulated acceptable reasons why Johnson was shackled pursuant to *Deck*, 544 U.S. at 624 (holding: (1) a due process violation occurs if the defendant is shackled in the presence of the jury, without articulated reasons why the shackling is necessary; (2) prejudice need not be shown if this occurs; and (3) *on direct appeal*, the burden then shifts to the government to prove beyond a reasonable doubt the shackling did not contribute to the verdict). However, the State argues, because Johnson's claim is presented within the context of ineffective assistance of trial counsel, under *Strickland*, 466 U.S. at 694, the burden remains with Johnson to show, but for counsel's breach of duty in failing to object to the shackling, there is a reasonable probability the outcome of the trial would have been different. Hence, it asserts, the postconviction court erred in shifting the burden onto the State to show beyond a reasonable doubt the shackling did not affect the verdict and, failing in its proof, vacating Johnson's convictions. The State further contends if the correct burden of proof is applied, Johnson cannot succeed on his claim due to the overwhelming evidence supporting all statutory elements of first-degree murder.

"Generally, postconviction relief proceedings are reviewed for correction of errors at law." *Reilly v. Iowa Dist. Ct.*, 783 N.W.2d 490, 493 (Iowa 2010). However, claims of alleged violations of constitutional rights are reviewed in "light of the totality of circumstances and the record upon which the postconviction

court's ruling was made." *Id.* (internal quotations omitted). "This is the functional equivalent of de novo review." *Id.* Additionally, a postconviction-relief applicant asserting an ineffective-assistance-of-counsel claim must prove by a preponderance of the evidence that counsel breached an essential duty and that he was prejudiced by counsel's failure. *Strickland*, 466 U.S. at 698.

The United States Supreme Court has held—on a direct appeal of the penalty phase of a capital case—no showing of actual prejudice is required to prove a due process violation when a defendant is routinely shackled, in view of the jury, and without an individualized reason identifying what essential state interests were met by the shackling. *Deck*, 544 U.S. at 643–45. This holding is based on the inherently prejudicial nature of shackling. *Id.* at 626–27 (citing *Holbrook v. Flynn*, 475 U.S. 560, 568 (1986)). If a due process violation is established, the burden shifts to the State to prove "beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained." *Id.* at 635; *see also Chapman v. California*, 386 U.S. 18, 24 (1967).

Our Iowa Supreme Court, on direct appeal of a criminal conviction, has found shackling to be inherently prejudicial, but "on rare occasions . . . [it] may be justified despite the fact that some prejudice will occur." *State v. Wilson*, 406 N.W.2d 442, 449 (Iowa 1987). Without finding a due process violation in the absence of articulated reasons for the shackling, it held the State has the burden to show the necessity for physical restraints. *Id.* Additionally, the district court must "place in the record in the presence of the defendant and counsel the reasons for shackling and give them an opportunity to make their objections known." *Id.* at 449–50 (holding no abuse of discretion where the trial court

ordered the defendant to be shackled due to his past history of escape attempts, but that in cases of shackling, the court, "upon agreement of the defendant, should instruct the jury against bias before taking evidence"). It further held the reason given for shackling is reviewable for an abuse of the trial court's discretion. *Id.* at 450.

Our Iowa case law has yet to address the issue of shackling within the context of an ineffective-assistance-of-counsel claim; specifically, whether the burden remains on the applicant to show he was prejudiced by counsel's failure to object to either the shackling or the lack of reasons articulated by the district court as to what essential state interests were served by the shackling. We do note the majority of jurisdictions have held that, when asserting an ineffective-assistance claim, the applicant retains the burden of showing the outcome of the proceeding would have been different but for the shackling, and that the breach of duty for failing to object to shackling by itself does not necessarily result in prejudice. *See Marquard v. Sec. for Dep't of Corr.*, 429 F.3d 1278, 1313–14 (11th Cir. 2005) (finding, in a habeas corpus action, the state supreme court did not improperly conclude the defendant failed to carry his burden showing he was prejudiced by shackling during the penalty phase; it further noted that, due to the overwhelming evidence of the defendant's culpability, the outcome of the sentencing proceeding would not have been different because, even after *Deck*, the postconviction applicant "still has the burden in his IAC-shackling claim to establish a reasonable probability that, but for his trial counsel's failure to object to shackling, the result of [the proceeding] would have been different"); *Fountain v. United States*, 211 F.3d 429, 436 (7th Cir. 2000) (holding that, due to the

overwhelming evidence of the defendant's guilt, applicant failed to carry his burden showing he was prejudiced by counsel's failure to object to the shackling);[2] *People v. Robinson*, 872 N.E.2d 1061, 1071–72 (Ill. App. Ct. 2007) (holding the trial court erred in shackling the defendant without stating particularized reasons; however, because of the overwhelming evidence in the State's case, the defendant did not meet his burden of showing he was prejudiced by trial counsel's failure to object to the court's error, and the State had proved beyond a reasonable doubt the error was harmless); *Stephenson v. State*, 864 N.E.2d 1022, 1038 (Ind. 2007) (holding the defendant bears the burden of establishing *Strickland* prejudice when asserting an ineffective-assistance claim based on shackling);[3] *but see Dickerson v. State*, 269 S.W.3d 889, 893–94 (Mo. 2008) (determining that if the defendant "establishes that he was visibly shackled, without the requisite finding of necessity," prejudice is automatically established).

---

[2] The district court, in declining to follow the circuit courts' reasoning, relied on the fact that these were habeas corpus actions that required a different standard of review. However, because federal courts are bound to reverse the state court's decision if it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law," *see* 28 U.S.C. section 2254(d)(1) (2011), the federal courts are bound by the same *Strickland* and *Deck* standards our court is now employing. Consequently, the reasoning found in the Eleventh and Seventh Circuit opinions cited herein is applicable to this case. Furthermore, the district court asserted the decisions occurred pre-*Deck*, which is not a concern with the *Marquard* and *Fountain* opinions.

[3] The district court distinguished these cases for a variety of reasons, including the differing facts and how *Deck* cannot be applied retroactively to the underlying trials in these cases. Nonetheless, we conclude the reasoning espoused in these opinions is sound, and we decline to follow the jurisdictions that hold if the claimant "establishes that he was visibly shackled, without the requisite finding of necessity," the claimant effectively demonstrates prejudice, without having to show the outcome of the proceeding would have been different but for counsel's error. *See Dickerson*, 269 S.W.3d at 894.

We agree with the majority of jurisdictions that it remains the applicant's burden to demonstrate prejudice when claiming ineffective assistance of counsel based on the lack of an objection to shackling, or counsel's failure to require the district court to make a particularized finding on the record as to why the shackling was necessary. Specifically, we hold that, when a postconviction applicant raises an ineffective-assistance claim alleging counsel breached an essential duty by failing to object to the applicant's shackling at trial, the applicant still must show a reasonable probability the result of the proceeding would have been different but for counsel's breach of duty.[4] *See Strickland*, 466 U.S. at 695.

The State also argues that had an objection to the shackling been made, the probability of a different result at trial is low. To prove Johnson committed two counts of murder in the first degree, the State needed to establish Johnson acted with malice aforethought, killing his two victims "willfully, deliberately, and with premeditation." Iowa Code §§ 707.1 & .2(1); *see also State v. Heemstra*, 721 N.W.2d 549, 552 (Iowa 2006) (noting the elements required to prove first-

---

[4] The district court, in concluding that, regardless of the ineffective-assistance framework, it was the State's burden to prove beyond a reasonable doubt Johnson was not prejudiced, related its concern that an "incongruous result" would occur if the defendant still bore the burden of proving prejudice. Specifically, the court found that:

> [A] defendant could lose his or her right to a fair trial by deployment of visible shackling when counsel was so ineffective that no objection was even raised. But if counsel had raised an objection, a conviction obtained in violation of *Deck* would be overturned without a showing of actual prejudice.

While we understand this concern, that is not the result reached by this opinion. Rather, our holding conforms to the *Strickland* standard by requiring the applicant to retain the burden of proving a reasonable probability the outcome of the trial would have been different but for counsel's failure to object to the shackling or the lack of articulated reasons by the district court. Within the postconviction forum, the applicant has the opportunity to demonstrate a reasonable probability the outcome of the proceeding would have been different absent counsel's breach of duty. This does not result in an incongruous outcome, but is in fact the proper framework in which to conduct the analysis of an ineffective-assistance claim.

degree murder).    While Johnson did not deny he killed the two victims, he asserted he was guilty of voluntary manslaughter[5] because the elements for first-degree murder convictions were lacking.    The State contends, however, that any claim of "sudden, violent, and irresistible passion" was greatly overshadowed by Johnson's "willful, deliberate and premeditated" actions.    This evidence includes Johnson: (1) stating to his friend, Mark Bonney, that he wanted to "get his hands on" White two to three weeks before the murders; (2) going into his house the night of the murders to retrieve his gun; (3) driving five and one-half miles to his wife's apartment; (4) parking his car approximately one block away from the apartment; (5) obscuring his face by wrapping himself in a hooded sweatshirt; (6) positioning himself by kneeling outside the apartment's screen door; (7) waiting several seconds before firing his gun; (8) proceeding to shoot White three times; (9) shooting White once more after entering the residence; (10) chasing Kim down the hallway, and opening the daughter's bedroom door before shooting Kim; (11) bludgeoning both White and Kim in the back of their heads with the butt of his gun multiple times, "to make sure they were dead;" and (12) declaring to his daughter after shooting the victims that Kim "was f-ing" White.    As the State argues, these uncontested facts overwhelmingly prove

---

[5] Voluntary manslaughter occurs:

> [W]hen [the defendant] causes the death of another person, under circumstances which would otherwise be murder, if the person causing the death acts solely as the result of sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a person and there is not an interval between the provocation and the killing in which a person of ordinary reason and temperament would regain control and suppress the impulse to kill.

Iowa Code § 707.4.

Johnson "willfully, deliberately, and with premeditation" killed White and Kim, thereby satisfying the disputed elements of proof for first-degree murder.

Notwithstanding these contentions, the appropriate course for this court to take is to remand the case back to the district court for it to apply the correct *Strickland* standard for a postconviction-relief proceeding. *See State v. Robinson*, 506 N.W.2d 769, 770–71 (Iowa 1993) (noting if an appellate court "find[s] an incorrect legal standard was applied, we remand for new findings and application of the correct standard"). Specifically, the district court must decide whether Johnson, as the postconviction applicant, met his burden showing that, but for counsel's failure to object to the decision to have Johnson shackled, there is a reasonable probability the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 695.

## III. Waiver of Attorney-Client Privilege

Johnson, in his cross-appeal, argues the postconviction court erred in denying his motion for a protective order asserting the presence of attorney-client privilege. He argues that, because he has been granted a new trial based on the court's grant of his postconviction application, the "well has been poisoned" now the State has had the opportunity to view all previously-privileged documents. As a remedy, Johnson urges that the case be dismissed.

We review rulings regarding discovery for an abuse of discretion. *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000). The district court is vested with wide discretion when ruling on issues of discovery, and we will not disturb its decision unless it is clearly unreasonable and not supported by substantial evidence. *Id.*

Our supreme court has noted that the concern for attorney-client privilege "disappears during postconviction relief proceedings." *State v. Tate*, 710 N.W.2d 237, 241 n.2 (Iowa 2006). This is due to the fact the defendant waives the privilege when he puts at issue the effectiveness of counsel. *See generally State v. Tensley*, 249 N.W.2d 659, 662 (Iowa 1977) (holding the defendant cannot assert attorney-client privilege after waiving that right). Therefore, the postconviction court did not abuse its discretion in denying Johnson's motion for a protective order for previously-privileged documents.

**IV. Expert Testimony**

Johnson next asserts the postconviction court erred in denying his request for a state-funded expert to testify during the postconviction hearing regarding his level of intoxication during and prior to the crime.

We review the court's decision whether or not to grant the defendant's application for a state-funded expert for an abuse of discretion. *State v. Van Scoyoc*, 511 N.W.2d 628, 630 (Iowa Ct. App. 1993).

In its ruling, the postconviction court noted a state-funded expert who would testify about Johnson's level of intoxication would be redundant at best. At trial, Johnson attempted to secure an expert who would testify he was intoxicated, but failed to do so because the hired expert did not agree Johnson was intoxicated to the point his judgment was impaired. Consequently, we agree with the postconviction court's conclusion that another, state-funded expert would not in any way further Johnson's case, and therefore the court did not abuse its discretion in denying Johnson's motion for a state-funded expert.

**V. Ineffectiveness of Appellate Counsel**

Johnson's final claim alleges appellate counsel was ineffective for failing to raise the shackling issue as part of Johnson's direct appeal. However, this issue will either be rendered moot, or subsumed within, the postconviction court's ruling regarding the ineffective-assistance-of-trial-counsel claim. This follows because, if the postconviction court finds trial counsel was ineffective, Johnson will be granted a new trial; concomitantly, if the court rules that Johnson's claim is without merit, appellate counsel would not have been ineffective for failing to raise a meritless issue. Consequently, we decline to either address the merits or preserve this claim.

**VI. Conclusion**

Having considered Johnson's claims, we conclude the postconviction court properly denied his request for a state-funded expert and motion for a protective order. We deny his ineffective-assistance-of-appellate-counsel claim. However, we conclude the postconviction court erred in its burden-shifting analysis. Consequently, we affirm the postconviction court's orders regarding Johnson's motions for appointment of an expert and protective order, but reverse the court's grant of his application for postconviction relief and order for a new trial. We remand the case back to the postconviction court to apply the correct standard to Johnson's ineffective-assistance-of-trial-counsel claim, which will also resolve the appellate ineffective-assistance-of-counsel claim.

**REVERSED AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**