# IN THE COURT OF APPEALS OF IOWA

No. 14-0540
Filed March 23, 2016

**ROBERT CHARLES WADDELL,**
   Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
   Respondent-Appellee.
_____


   Appeal from the Iowa District Court for Scott County, Mark D. Cleve,

Judge.


   Robert Charles Waddell appeals from the denial of his application for

postconviction relief. **AFFIRMED.**


   Lauren M. Phelps, Davenport, for appellant.

   Thomas J. Miller, Attorney General, and Aaron Rogers, Assistant Attorney

General, for appellee State.



   Considered by Danilson, C.J., Vogel, J., and Goodhue, S.J.*

   *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**GOODHUE, Senior Judge.**

Robert Charles Waddell was convicted of first-degree robbery, assault causing serious injury, going armed with intent, fifth-degree theft, and assault while participating in a felony by a jury trial held in November of 2003. The latter assault was merged with the robbery conviction, and he was sentenced accordingly. He appealed and the supreme court dismissed his appeal as frivolous. Waddell then filed his first postconviction-relief action. His request was denied. He appealed, and again, the appeal was dismissed as frivolous. Waddell has filed a second request for postconviction relief, and that was also denied. Waddell again has appealed.

## I. Background Facts

On January 14, 2003, Waddell was observed leaving a grocery store in Davenport with a quantity of meat that he had not paid for. A store employee followed him and attempted to apprehend him in the parking lot. A fight developed and eventually three other bystanders came to the store employee's assistance. The store employee observed Waddell pull a knife from his clothing. Waddell threatened to kill those trying to apprehend him. The store employee grabbed Waddell's wrist that held the knife in an attempt to control its use. Those apprehending Waddell demanded that he drop the knife, but he did not do so until he had been thrown to the ground and one of the bystanders stepped on his hand with enough force that Waddell lost his grip and the knife was kicked away. There was no testimony that any other knife was involved.

Mark Angotti, one of the bystanders who entered the fray, suffered a cut to his wrist that severed some of his tendons. Waddell also suffered minor cuts. There was blood on the ground, on the knife, and on several items of clothing.

The police were called and collected the knife and some of the bloody clothing. The items were tested to determine whose blood was present on the items seized. The results indicated that only Waddell's DNA was on the knife and both Waddell's and Angotti's DNA appeared on the bloodstained clothing. The results of the DNA tests were admitted at trial. Waddell's defense was that he had paid for the meat, and he also raised a claim of diminished capacity.

Waddell now contends that his first postconviction counsel was ineffective. There were surveillance cameras in the grocery store where the theft took place, but no product of the cameras was admitted into evidence at the trial. Murray Bell was Waddell's counsel during the trial resulting in his conviction. Bell testified at the first postconviction hearing that the prosecutor had advised him she was unable to make the equipment work to display the surveillance video. The video was not shown to the jury at the trial. At his request Bell was given access to the video prior to trial and had been successful in getting the equipment to play the surveillance video. Bell testified that it showed Waddell left the store without paying for the meat and went to the parking lot, just as the State's evidence would show. Bell decided not to say anything more about the surveillance video. The first postconviction counsel did not examine the surveillance film and Waddell contends that the failure to do so constituted ineffective assistance of counsel. Waddell hoped the video would exonerate him and impeach Bell.

The surveillance video was obtained, converted to a reviewable form as a part of the second postconviction proceeding, and reviewed by the court before ruling. In addition, prior to the second postconviction proceeding, an independent review of the examination of the DNA testing of the blood-stained items was also obtained. The trial court denied Waddell's request for postconviction relief. Waddell now claims that his counsel in his second postconviction-relief proceeding was ineffective for failing to object to the admission of the video made by the surveillance cameras. Waddell also claims that his first postconviction-relief counsel was ineffective for failing to get an independent examination of the stained clothing. In addition, Waddell contends that the trial court in this postconviction hearing erred in its analysis of the blood testing made by the independent examiner. Finally, Waddell claims the second postconviction counsel was ineffective for failing to file a request with the court to amend or enlarge its misstatement of the expert's testimony.

## II. Error Preservation

The State concedes Waddell preserved error on the admission of the video into evidence and the trial court's misinterpretation of the independent examiner's review of the blood test. To the extent Waddell claims his counsel in the second postconviction hearing was ineffective, the traditional rules of error preservation are not applicable. *See State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010).

## III. Scope of Review

Ineffective-assistance-of-postconviction-counsel claims are based on a statutory right rather than a constitutional right, but the standard of review

remains de novo. *Collins v. State*, 588 N.W.2d 399, 401-02 (Iowa 1998). Evidentiary rulings are reviewed for abuse of discretion. *State v. Jordan*, 663 N.W.2d 877, 879 (Iowa 2003).

## IV. Discussion

To prevail on a claim of ineffective assistance of counsel, a claimant must prove by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). A claim of ineffective assistance of counsel must overcome the presumption that counsel is competent. *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984). Choices of strategy after proper investigation are virtually unchallengeable. *Ledezma*, 626 N.W.2d at 143. For relief to be granted there must be a determination that but for effective assistance there is a probability the result would have been different. *Id.* at 145. It logically follows that any error on a technical issue not material to the prosecution's case is not grounds to grant relief since no prejudice results. Counsel is not ineffective for failing to file a meritless claim. *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011).

A. Failure to obtain an independent test of the stained clothing

The DNA of the blood stains was of little or no importance in Waddell's conviction. The record established that there was only one knife involved and Waddell had possession of it during the entire altercation until he was finally subdued. A review of the testing was obtained prior to the second postconviction hearing. The independent reviewer testified he agreed that both Waddell's and Angotti's DNA were present on the clothing submitted and that only Waddell's DNA was on the knife.

Waddell contends it is important that the independent examiner testified no test had been made as to whether the stains were blood stains. The lab report submitted at the underlying trial referred to the stains as "apparent blood" and no test was made to ascertain the material creating the stain. The stained materials were submitted for testing by the investigating officers to determine whose blood was present in the sample and not whether or not it was blood. At the time they gathered the items in question they did not need a test to determine if the substance was blood. It was obvious. The only question was whose blood had created the stains. The first postconviction counsel had no duty to obtain a review of the lab report since whose blood was on the items was immaterial to Waddell's conviction. Furthermore, the failure to do so was not prejudicial as all the independent testing did was to confirm the results. Finally, the district court in this proceeding did not incorrectly characterize the results of the independent expert's testimony. The court correctly noted the independent test confirmed the original results. The fact there was no test to determine what had caused the stains did not impact the test results.

B. The surveillance video

Initially, Waddell contended that his first postconviction counsel had a duty to review the surveillance video. At the conclusion of his second postconviction hearing, the court ordered that the hearing be left open for the video to be viewed with the specific direction to make it available to Waddell. Because of the age of the equipment and tape and fear of damage to the tape, a forensic computer examiner from the Davenport Police Department found it necessary to transfer the video contents to a compact disc. The court in its ruling noted that Waddell

had reviewed the video. Waddell's appellate brief makes much of the lack of any other statement in the record that Waddell or his counsel at the second postconviction hearing had had an opportunity to review the video. Waddell's appellate counsel is not the same counsel as the counsel he had at the district court hearing on the second postconviction-relief action.

It is apparent that either Waddell or his current postconviction counsel, if not both, had reviewed the video. The first part of the second postconviction hearing was held on February 28, 2013. At that time Waddell objected that he had not had an opportunity to view the video. The court stated, "If it's possible I will make arrangements that you get to view the thing as well," referring to the video. On April 18, 2013, Waddell's counsel stated a video had been produced for the court and contended that it was not the original, but a transcription and objected to its admission. It is obvious that at least Waddell's counsel, by April 18, had viewed the transcribed video and the only objection was that it was not the original. The court ordered a hearing to consider if an adequate foundation for the admission of the transcription of the video could be made.

At the hearing the forensic computer examiner testified as to the procedure used and the fact that he had prepared both a complete transfer of the video and transfer of only the relevant portions. Waddell contends that his second postconviction counsel was ineffective for not objecting to the admissibility of the video. The record establishes that he did, in fact, lodge an objection that was overruled after the evidence at the hearing established a foundation for its admissibility. The court reviewed the video and found it to be just as Bell had testified.

To the extent Waddell contends the court committed an error in admitting the video, the ruling can only be reversed for an abuse of discretion. *See State v. Nelson*, 791 N.W.2d 414, 419 (Iowa 2010). An abuse of discretion exists only when the grounds for admission are clearly untenable and unreasonable. *Id.* The courrt's admission of the video based on the foundation laid is not unreasonable. In any event, the State did not need the video to defend against a claim of ineffective assistance of counsel. Bell's testimony as to the content of the video had not been challenged. Waddell desired and needed the video to impeach Bell and exonerate himself, and it did not fill that need. Its admission became meaningless; even if it were inadmissible, its admission would be harmless error. To the extent Waddell claims that counsel should have filed a motion to amend or enlarge, lack of error preservation was not raised by the State and is not an issue.

C. Various other claims

Waddell's appellate brief made mention of various other claims that were raised at the trial level. Waddell complains of the waiver of his attorney-client privilege in the first postconviction hearing. In that hearing a letter from Waddell to Bell was admitted into evidence in which he confessed he did not pay for the meat. An attorney-client privilege existed in the original criminal trial but it disappeared when the postconviction-relief petition was filed. *State v. Tate*, 710 N.W.2d 237, 241 n.2 (Iowa 2006); *Johnson v. State*, 860 N.W.2d 913, 921 (Iowa Ct. App. 2014).

Waddell also objects to the first postconviction counsel's apparent failure to keep out of the record his claim of diminished capacity in the initial criminal

trial. The original trial is the focus of a postconviction-relief proceeding, and it is hard to visualize when the record made at the original trial would not be available to either party to the proceeding as well as to the court. If such an exception exists, it has not been pointed out to this court, and there is no reason to think it would be applicable to this case.

Waddell's appellate brief provided no legal authority for the miscellaneous other claims made. When no supporting authority is given for a claim in an appellate brief, the claim is waived for purposes of appeal. Iowa R. App. P. 6.903(2)(g)(3).

**AFFIRMED.**