# IN THE COURT OF APPEALS OF IOWA

No. 15-1959
Filed August 31, 2016

**IN THE MATTER OF THE GUARDIANSHIP OF**

**A.B. and B.B.,**
**Minor Children,**

**A.B., Father,**
    Appellant/Cross-Appellee,

**J.K., Guardian,**
    Appellee/Cross-Appellant.
_____

Appeal from the Iowa District Court for Appanoose County, Myron L. Gookin, Judge.

A father appeals the district court's appointment of the maternal grandmother as guardian of his two minor sons. **REVERSED AND REMANDED WITH INSTRUCTIONS.**

Heather M. Simplot of Harrison, Moreland, Webber & Simplot, P.C., Ottumwa, for appellant.

Lora L. McCollum-Sinclair of McCollum Law Firm, P.L.L.C., West Des Moines, and Shireen L. Carter of Shireen Carter Law Office, P.L.C., Clive, for appellee.

Shannon M. Henson of Carney & Appleby, P.L.C., Des Moines, guardian ad litem for minor children.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

After her daughter died in a car accident, an Iowa grandmother asked to be appointed as guardian for her grandsons, who are now eight and ten years old. Their father, who lives in Texas, objected to the guardianship and filed a petition seeking custody of his sons. The Iowa district court appointed the grandmother as guardian, finding the father could not take custody because a Colorado court order prohibited him from having contact with his children. The Iowa court cited the full-faith-and-credit provisions of the Violence Against Women Act[1] (VAWA) and the United States Constitution.[2] In challenging the guardianship, the father contends the Iowa court erred in giving full faith and credit to the Colorado order.

On appeal, the grandmother concedes the Iowa district court "likely" had authority to modify the Colorado order under the Uniform Child Custody Jurisdiction and Enforcement Act[3] (UCCJEA) and the Parental Kidnapping Prevention Act[4] (PKPA). But she argues the Iowa court was not required to do so. The grandmother believes, regardless of its underlying analysis, the Iowa district court properly found the need for a guardianship under Iowa Code section 633.556 (2013) and acted in the children's best interests by appointing her as their caregiver.

---

[1] "Any protection order issued that is consistent with subsection (b) of this section by the court of one State . . . shall be accorded full faith and credit by the court of another State . . . and enforced by the court and law enforcement personnel of the other State . . . as if it were the order of the enforcing State . . . ." 18 U.S.C. § 2265(a).

[2] "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art IV, § 1.

[3] Iowa Code ch. 598B (2013).

[4] 28 U.S.C. § 1738A.

Unlike the grandmother, we are not convinced the Iowa district court would have reached the same result if it had realized it could modify the Colorado child-custody determination. Because we read the UCCJEA and PKPA as allowing the Iowa court to modify the Colorado custody determination under the circumstances of this case, we reverse the order establishing the guardianship and remand for the district court to apply the correct legal standards in deciding the grandmother's petition and the father's request for custody.

## I. Facts and Prior Proceedings

Aaron and Heather married in 2004. During the marriage, the couple had two sons—A.B., who was born in 2006, and B.B., who was born in 2008. Those two children are the subject of this appeal. Heather also had two older children in her care. The family of six was living in Gilpin County, Colorado, in December 2010 when Heather alleged Aaron engaged in domestic violence. She obtained a civil protection order preventing Aaron from having contact with her or the children. In 2011, Heather moved with the children to Iowa to live with her mother, Juanita. Aaron moved to Texas to live with his parents. He did not appeal the Colorado protection order.

In January 2012, based on Heather's petition, a Colorado court entered a decree dissolving their marriage. The decree indicated Aaron was served with a summons in August 2011 but did not appear in person for the proceedings. The decree continued the 2010 protection order without change. A parenting plan attached to the decree allocated responsibility for major decision-making regarding A.B. and B.B. to Heather and repeated that Aaron was to have no contact with the children. The plan noted Heather had relocated with the children

to Iowa in 2011. A child support order set Aaron's monthly obligation at $617. Despite that order, Aaron never paid any child support for A.B. and B.B. Aaron did not appeal any aspect of the dissolution decree.

Not being able to see his children fomented Aaron's "genuine distrust" for the legal system and the police. In 2011 and 2012, he repeatedly called the Albia, Iowa police department asking the officers to perform welfare checks on his children. When he did not believe the police were being responsive, he became angry and yelled obscenities at the officers. In one call, he threatened to kill the police chief. In 2013, Aaron left a threatening voicemail message for the Colorado judge who issued the dissolution decree, suggesting the judge should "burn in hell" for prohibiting Aaron from contacting his children. Colorado authorities prosecuted Aaron for the threats against the judge; he entered a guilty plea to a felony stalking charge with a deferred sentencing provision.

Uncertainty arose about the legal custody of A.B. and B.B. in June 2014 when their mother died in a car accident. At the time of Heather's death, she and her young sons[5] were living with Juanita in Numa, Iowa. The children remained in Juanita's care after Heather's death. Later that summer, Juanita filed a petition for appointment as the guardian of A.B. and B.B. in the Iowa District Court for Appanoose County. About three weeks after Juanita sought guardianship, Aaron filed a petition in the Iowa court to establish custody. His petition asserted the grandmother "should be ordered to turn the minor children over" to him. He also filed an answer requesting the court deny Juanita's guardianship petition.

---

[5] One of Heather's two older children also lived with the grandmother.

In November 2014, while the Iowa guardianship petition was pending, Aaron filed a motion in Gilpin County, Colorado, to vacate the permanent restraining order issued in 2010. The motion indicated Heather was deceased and Aaron did not want the restraining order to "prevent appropriate court orders in other jurisdictions concerning [his] minor children." Aaron asserted he posed no risk of harm to his children. After a telephonic hearing in March 2015, the Colorado court declined to modify or dismiss the protection order. The Colorado court rejected Aaron's argument that Heather's death deprived the court of jurisdiction.[6] But the Colorado court noted it would revisit the issue depending on the outcome of the Iowa guardianship proceeding.

Back in Iowa, in December 2014, the district court granted Aaron's request to continue the hearing on the guardianship petition and also appointed Juanita as the temporary guardian of A.B. and B.B. "for the limited purposes of enrolling and maintaining the proposed wards in school and attending to their medical needs." The district court also granted an injunction to prevent Aaron from removing the boys from Iowa.

The Iowa district court held a two-day hearing in early August 2015 on the grandmother's petition and the father's request for custody. The guardian ad litem for A.B. and B.B. recommended Juanita's petition for guardianship be granted.

---

[6] It is less clear under Iowa law that a domestic-abuse protection order could continue to prohibit a father from contacting his minor children if the former spouse has died. *See generally D.M.H. ex rel Hefel v. Thompson*, 577 N.W.2d 643, 645–46 (Iowa 1998) (noting definition of family members at Iowa Code section 236.2(4)(b) excludes children of family members under age eighteen).

In late September 2015, the court issued its ruling appointing Juanita as guardian for A.B. and B.B. The court ordered:

> [I]n the event the Colorado court should deem it appropriate to modify or cancel the existing protective order to allow contact between Aaron and his children . . . it shall be the duty of the guardian to support and encourage a loving and positive relationship between the wards and their father, and to issue liberal and appropriate contact between the wards and their father.

The order then set out minimum visitation standards, recognizing Aaron was still on probation for the felony charge involving the Colorado judge.

In early October, Aaron filed a motion to reconsider in which he argued "Iowa has the ability to modify the default Colorado protective order to place the children in Aaron's physical care." Juanita resisted, contending the Iowa court "cannot amend, and must enforce, the protective order issued by the Colorado court." The court denied the motion to reconsider with the exception of adjusting the assessment of costs. Aaron filed a notice of appeal, and Juanita filed a cross appeal.[7]

## II. Scope and Standards of Review

The parties agree we review the appointment of a guardian for errors at law. *In re Guardianship of M.D.*, 797 N.W.2d 121, 127 (Iowa Ct. App. 2011); *see also* Iowa Code §§ 633.33, .555. But the issues here stretch beyond the creation of the guardianship. Juanita's petition commenced a child-custody proceeding within the meaning of Iowa Code section 598B.102(4). *See In re Guardianship of Deal-Burch*, 759 N.W.2d 341, 344 (Iowa Ct. App. 2008). Because the custody issues span several states and implicate a web of jurisdictional statutes—the

---

[7] The grandmother does not raise any issues in her cross appeal.

UCCJEA, PKPA, and VAWA—our initial review is de novo. *See In re Jorgensen*, 627 N.W.2d 550, 555 (Iowa 2001).

We recognize the district court was at a disadvantage in deciding the custody issue because the parties did not raise their jurisdictional arguments with the same clarity at trial as they do on appeal. But because subject matter jurisdiction may be raised at any time, and jurisdictional issues are mandatory and not discretionary, we are compelled to consider the impact of these statutes on the custody question. *See In re B.C.*, 845 N.W.2d 77, 79 (Iowa Ct. App. 2014); *L.N.S. v. S.W.S.*, 854 N.W.2d 699, 703 (Iowa Ct. App. 2013).

**III. Analysis**

Aaron challenges the Iowa district court's decision to create a guardianship for A.B. and B.B. and to appoint Juanita as their guardian.[8] He argues the Iowa court, in determining the need for a guardianship, was (1) not required to give full faith and credit to the Colorado protection order and (2) could have modified the Colorado custody determinations.

The petitioning party must prove the necessity for the appointment of a guardian by clear and convincing evidence. Iowa Code § 633.556(1); *In re Guardianship of G.G.*, 799 N.W.2d 549, 551 (Iowa Ct. App. 2011). After finding the need for a guardianship, the court considers who is to be appointed, giving preference to the natural parent. *In re Guardianship of G.G.*, 799 N.W.2d at 551–52 (citing Iowa Code § 633.559 (2009)).

---

[8] Because we reverse and remand for further proceedings on the first claim, we do not reach Aaron's alternative claim that Juanita was not a suitable guardian for the children.

In this case, the district court found clear and convincing proof of the need to appoint a guardian based solely on the out-of-state court order prohibiting Aaron from having contact with the children. In the court's words:

> Very simply, with the Colorado protective order in place, and the requirement that Iowa give full faith and credit to Colorado court orders, Aaron cannot act as the guardian and custodian of his own children. Someone must be appointed as the guardian and custodian of these children. Juanita requests the appointment.

The Iowa district court rightly identified Article IV, Section I of the United States Constitution and section 2265(a) of VAWA as mandating Iowa give full faith and credit to the Colorado protection order. Likewise, the PKPA requires every state to accord full faith and credit to child "custody determination[s]" by a court of another state if those determinations were consistent with the provisions of the act. 28 U.S.C. § 1738A(a) ("The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsections (f), (g), and (h) of this section, any custody determination or visitation determination made consistently with the provisions of this section by a court of another State."); *see also In re Jorgensen*, 627 N.W.2d at 557.

But the Iowa district court did not consider whether it had authority to modify the Colorado orders under the PKPA and the UCCJEA. *See generally L.N.S.*, 854 N.W.2d at 703–05. At issue are the Colorado "permanent civil protection order" issued in December 2010 and the Colorado dissolution decree issued in January 2012. Both orders make a custody determination in that they prohibit Aaron from having any contact with his children.[9] *See* 28 U.S.C.

---

[9] In its March 2015 order rejecting Aaron's request to dismiss the 2010 protection order, the Colorado court acknowledged the protection order excluding the father's contact with

§ 1738A(b)(3) (defining "custody determination" as "a judgment, decree, or other order of a court providing for the custody of a child"); *see also* Iowa Code § 598B.102(3), (4) (2013) (defining "child-custody determination" as "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child" and defining "child-custody proceeding" as including proceedings for protection from domestic violence).[10]

The PKPA and UCCJEA govern when a state has jurisdiction to decide an interstate child-custody dispute. *See Anthony H. v. Matthew G.*, 725 S.E.2d 132, 134 (S.C. Ct. App. 2012). The PKPA is primarily concerned with promoting full faith and credit for custody determinations, while the UCCJEA aims to ensure uniformity with respect to custody decrees between courts in different states. *Id.*; *see also Staats v. McKinnon*, 206 S.W.3d 532, 544 (Tenn. Ct. App. 2006) (describing UCCJEA as evolving out of an earlier uniform act and a federal full-faith-and-credit statute). "[I]f a state makes a custody determination consistent with the PKPA, that decision should be enforced in other states." *L.N.S.*, 854 N.W.2d at 703. The second state may modify the initial custody determination

---

his children could "arguably qualify" as a "de facto custody determination" and professed to have reviewed the UCCJEA in making its decision. The Colorado court suggested the UCCJEA, Colo. Rev. Stat. § 14-13-110 (2016), would require a conference with the Iowa court before modification of the protection order. We do not read the UCCJEA, Iowa Code § 598B.110, as requiring communication between the two state courts under the circumstances presented here (in the absence of temporary emergency jurisdiction under Iowa Code section 598B.204(4)) though such communication between the two courts may be beneficial on remand.

[10] The parties do not provide any authority, and we have found none, concerning the ability of a state to modify a protective order issued by another state that is consistent with VAWA's section 2265(b). But because we are concerned about the child-custody aspect of the Colorado protection order and not the provision prohibiting contact between Aaron and Heather, we conclude the PKPA and UCCJEA govern the modification question.

only under "carefully circumscribed situations" outlined in the PKPA. *Id.* (quoting *Meade v. Meade*, 812 F.2d 1473, 1476 (4th Cir. 1987)).

As a threshold matter, the parties do not dispute Colorado met the PKPA jurisdictional requirements to enter the protection order in 2010 and the custody determination as part of the dissolution decree in 2012. *See* 28 U.S.C. § 1738A(c). Colorado was the home state[11] of the children on the date the proceedings were commenced or had been their home state within six months before the commencement of the proceedings. *Id.* § 1738A(c)(2)(A). As A.B. and B.B. had not yet lived in Iowa for six months, no other state had jurisdiction over the custody determinations in December 2010 and January 2012.

Having concluded the Colorado custody determinations were entered consistently with the PKPA, our next task is to decide whether Iowa had jurisdiction in 2015 to modify those custody determinations. Under the PKPA, Iowa may modify Colorado's custody determination if (1) Iowa has jurisdiction to make such a child custody determination and (2) Colorado no longer has jurisdiction or has declined to exercise such jurisdiction to modify such determination. *See id.* § 1738(f); *see also L.N.S.*, 854 N.W.2d at 704. Similarly, under the UCCJEA, Iowa may modify—by changing, replacing, or superseding— Colorado's custody determinations if (1) Colorado no longer has exclusive, continuing jurisdiction or Iowa would be a more convenient forum or (2) Iowa or Colorado determines the children or their parents do not presently reside in

---

[11] Section 1738A(b)(4) defines "home State" as "the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months . . . . Periods of temporary absence of any of such persons are counted as part of the six-month or other period."

Colorado. *See* Iowa Code § 598B.203; *see also L.N.S.*, 854 N.W.2d at 705. On appeal, Juanita acknowledges Iowa is now the home state of A.B. and B.B. and neither the children nor their parents or persons acting as parents reside in Colorado. Based on these facts, Juanita concedes "Iowa could likely modify the Colorado Protection Order." We agree with that concession.

Juanita further argues "the fact that Iowa could modify the order does not *require* Iowa to modify the order." She references the Colorado court's March 2015 determination that it had "continuing jurisdiction over this matter despite the current presence of all parties in states other than Colorado."[12]

We agree the language of section 598B.203 does not mandate modification of the Colorado custody determination. But the problem is the Iowa district court did not entertain the possibility of modification. By not considering its authority to modify the Colorado order, the district court found clear and convincing evidence of a need for guardianship based on an incorrect legal standard.

When an appellate court concludes the district court applied an incorrect standard, the appropriate course is generally to remand for new findings and application of the correct standard. *Cf., e.g.*, *State v. Ary*, 877 N.W.2d 686, 691–92 (Iowa 2016) (reversing and remanding for application of weight-of-the-evidence standard to motion for new trial); *State v. Robinson*, 506 N.W.2d 769,

---

[12] The Colorado court's legal determination is not binding on us. Under the UCCJEA:

> If the child, the parents, and all persons acting as parents have all left the State which made the custody determination prior to the commencement of the modification proceeding, considerations of waste of resources dictate that a court in State B, as well as a court in State A, can decide that State A has lost exclusive, continuing jurisdiction.

Unif. Child Custody Jurisdiction & Enf't Act § 202 cmt. (Unif. Law Comm'n 1997).

770–71 (Iowa 1993) (reversing and remanding with directions for deciding motion to sever); *Walters v. Herrick*, 351 N.W.2d 794, 796 (Iowa 1984) (describing procedure for determining attorney fees and noting propriety of remand when lower court has applied incorrect standard); *Johnson v. State*, 860 N.W.2d 913, 922 (Iowa Ct. App. 2014) (remanding for postconviction court to apply correct standard for resolving ineffective-assistance-of-counsel claim).

We reverse the creation of the guardianship and remand for the district court to consider Juanita's petition and Aaron's request for custody in light of its authority to modify the Colorado child-custody determinations. We express no opinion as to the ultimate outcome on remand. The order establishing Juanita as the temporary guardian for A.B. and B.B. remains in place.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**